Mabel C. Bennett vs. Grace E. Johnson } Eq. No. 277

Marshall C. Gilbert vs. Grace E. Johnson } Eq. No. 279

Howard B. Johnson et al. vs. Grace E. Johnson } Eq. No. 280

January 30, 1929.

BAKER, J. Final hearing.

In these three cases, which were heard together, the complainants are seeking a permanent injunction preventing the respondent from obstructing what they contend is a right of way leading across the premises of two of the complainants and the land of the respondent.

The property in question is situated in the Town of Narragansett and the portion of the alleged way involved in these proceedings runs in a general easterly and southerly direction from the main highway, known as the Boston Neck Road, to a point on land of the respondent adjacent to Westquage Beach. The premises owned by the complainants in Equity No. 280, are situated on the westerly side of the Boston Neck Road, whereas the property of the complainants Bennett and Gilbert and of the respondent is east of the Boston Neck Road.

The land owned by all the parties herein was formerly a portion of the old Jencks Farm, which was located on both sides of the Boston Neck Road. This farm consisted of about 330 acres. To the north of it lay the Card Farm of about 254 acres, and to the east was

the South Bonnet Farm of about 103 acres. This latter farm bounded southerly on the ocean and included Westquage Beach. Later the Card Farm and the South Bonnet Farm came under the same ownership and were known as the Munroe Farm.

Some time prior to July 14, 1806, one Simeon Potter died owning all three farms. By mutual understanding among his heirs a partition was entered into by agreement dated July 14, 1806. A few days later, viz.: on July 27, 1806, Abigail D. Wolf, who had received the Jencks Farm in the partition of the Potter estate, entered into a written agreement with Hezekiah and Hopestill Munroe, who had received the Card and the South Bonnet Farms, providing for the taking of seaweed from Westquage Beach. (Complainants' Exhibit 5.) In substance, this agreement provided that the owner of the Jencks Farm give to the owners of the Munroe Farm the right to cart seaweed and other sea-drift through the Jencks Farm in the same route or way which the proprietors of said Jencks Farm had been accustomed to cart the same, the way designated in the division deed for said privilege not being convenient as it was miry by the pond. The right was given to cart from the beach up to the Jencks house, and from there to the Card Farm. The agreement further provided that if the owners of the Jencks Farm should alter the course used for carting, then the owners of the Card Farm should have a cart way laid out for them to said beach equally as good as the one then used. The Munroes, in consideration of this right of way over the Jencks Farm, agreed with the said Abigail D. Wolf, her heirs and assigns, that they should have and take for their use one-half part of all the seaweed and other sea-drift from the beach, together with the right to pile it upon the beach above high water mark until carted away. It was fur-

ther agreed that the parties should exercise their respective rights in alternate weeks.

By mesne conveyances the Bonnet Point Land Company owns a considerable portion of what was the Munroe Farm, including that part adjoining Westquage Beach. One Elisha H. Browning is the owner of that part of the Munroe Farm which is at the southwesterly end of Westquage Beach and there bounds upon the Jencks Farm near the beach.

March 6, 1817, the Jencks Farm was conveyed to Elisha Watson, together with the privilege of taking seaweed and sea-drift agreeable to the contract between Abigail D. Wolf and the Munroes. Elisha Watson died July 7, 1847, leaving a will by the terms of which the Jencks Farm was devised for life to his three daughters, Harriet, Abby and Laura, with certain provisions over upon their decease. The last of these daughters, namely, Laura Watson, died November 23, 1905; the other two daughters having died on August 15, 1900, and February 27, 1901, respectively. These life tenants never lived on the Jencks Farm but it was leased to tenants from 1846 on.

A bill of complaint was filed in Washington County on June 12, 1902, asking for a partition of the Jencks Farm. A decree was entered September 29, 1903, appointing commissioners and authorizing the partition by metes and bounds and the platting of the land into lots and the laying out of streets. The commissioners' report is dated April 20, 1904. To this report was attached a map (Respondent's Exhibit O). Thereafter a final decree was entered. All the parties in the proceedings now before the Court take title by mesne conveyances following this partition suit.

The Court has viewed the premises in question. The remains of a cart path or way extending westerly from the Boston Neck Road toward the Jencks house and across land now owned by the complainants in Equity

No. 280 is visible on the ground. This portion of the way is not very material in these cases. Directly across the Boston Neck Road there appears to be the remains of a cart path or drift-way extending in an easterly direction down hill over land of the complainants, Bennett and Gilbert for some distance, when it turns at right angles and proceeds southerly over land of the respondent close to a stone wall for several hundred feet and then winds rather sharply downgrade to an opening in the fence near the beach. Certain portions of this way seem fairly well delineated on the ground; other portions, particularly at a short distance from the beach, seem considerably overgrown and more or less difficult to distinguish.

The Court is satisfied, however, from the view taken and from the testimony presented, that this path or way just described was undoubtedly the one used for carting seaweed from the beach over the Jencks Farm to the Jencks house. It unquestionably is the way referred to in the agreement of July 27, 1806, made between the owners of the Jencks and the Munroe farms.

In these cases the complainants are making two contentions. First: that the way in question became, by dedication and user, a public way, so that at the present time, they, as members of the public, have a right to use it for any purpose and that the respondent has no right to obstruct it by use of gates, bars, trees, stones or otherwise. Secondly: they urge, as present owners of various portions of the Jencks Farm, that there is appurtenant to their land the right to use the way in question in order to reach the beach.

The respondent contests most strongly these two claims of the complainants and denies that the way in question has become a public way or that the complainants have any right over

it as appurtenant to their ownership of part of the Jencks Farm.

It is clear from the testimony that no statutory proceeding was ever taken to make this way a highway or public road. There is nothing in the records of the Towns of Narragansett or South Kingstown in relation to this phase of the matter. Also, there has been no deed or grant dedicating this way to the public. If, therefore, it has become a public way, it must be under the common law by virtue of implied dedication and an acceptance by user.

Angell on Highways, Secs. 131, 134.

The Court in this State has had occasion more or less frequently to state the law in connection with the creation of public ways through dedication and user. Some of the cases bearing on this point are as follows:

Remington vs. Millard, 1 R. I. 93;
Hughes vs. Prov. & Worc. R. R., 2 R. I. 493;
New Shoreham vs. Ball, 14 R. I. 566;
Union Co. vs. Peckham, 16 R. I. 64;
Daniels vs. Almy, 18 R. I. 244;
Brown vs. Curran, 83 Atl. 515;
Eddy vs. Clarke, 38 R. I. 371;
Louttit vs. Alexander, 44 R. I. 257;
Dodge vs. Lavin, 34 R. I. 514.

It seems well settled that in order to create a public way by user it must appear clearly that such use has been general, uninterrupted, continuous and adverse. There must be an indication that there is a claim or assertion of public right in using the way. It would seem that where it is necessary to imply a dedication from use that the use must be more extensive and clearer than where the dedication is admitted and the use relates merely to the matter of acceptance by the public.

In these cases both sides produced a very large number of witnesses whose memories and experiences relating to the use of this way extended back a

considerable number of years. It would be impossible and it is unnecessary to refer in detail to all this testimony. Portions of it are quite conflicting and the Court has the duty of weighing it and drawing deductions from it as best it can. The complainants very strongly urge that this testimony, taken as a whole, is sufficiently clear and convincing to show that for many years the public generally was in the habit of using this way in passing from the Boston Neck Road to the beach, and that the use was so general, uninterrupted, continuous and adverse that the way has become a public way. The respondent, on the other hand, says that the testimony falls far short of showing these facts and that while some use was made of this way by persons desiring to reach the beach, it was largely permissive and was not of so general a character as to warrant the Court in finding a dedication to and an acceptance by the public.

An examination of the testimony relating to this point shows that at different times undoubtedly a considerable number of persons did pass up and down this way to and from the beach. The use of this way, of course, by tenants of the Jencks Farm or the Munroe Farm and persons employed thereon, or by owners of the property in dispute, would have little or no bearing in determining this question. These farms had the right to cart seaweed on alternating weeks over the way and apparently that right, at certain times in the year, had been more or less taken advantage of. The evidence would seem to show that on occasions picnic parties would go to the beach; also that fishermen and hunters went there. Some of these persons were undoubtedly friends and acquaintances of the tenants of the Jencks Farm and went over this way, if not with the direct permission of the tenants at least by reason of implied consent. Persons visited the beach on several occasions

when there had been wrecks and sand and stone had been carted from the beach over the way. It is quite clear from the testimony that a large part of the use of this way has been by persons on foot, many of the fishermen leaving their vehicles at the Jencks house, but, on the other hand, it appears that at certain times a considerable number of vehicles have used the way in order to get to the beach. The Court believes that the weight of the evidence would tend to show that there has been less use by vehicles in recent years and less use since automobiles have become very common. Unquestionably the cart path was rather rough and at one point quite steep, and during recent years probably portions of it not very passable.

The evidence indicates that up to within a few years most of the persons making use of the way lived in the general neighborhood, although some few undoubtedly came some considerable distance. In early years, and until the property in question became valuable as sites for summer residences, the land over which the way passed was ordinary farm land, portions of which were cultivated and parts not, and undoubtedly in early years was quite wild and not closely settled. Recently a considerable number of dwellings and other structures have been built on the property and in the immediate neighborhood, and in the summer there is undoubtedly a considerable population.

In support of her claim, the respondent calls to the Court's attention the fact that for many years gates have been maintained at various points on the driftway. The testimony is somewhat conflicting on this point. There is not much question but what the evidence shows that there have been gates at several places on the way for many years up to a comparatively short time ago. Whether these gates have always been shut is not so plain. The Court

is of the opinion, however, that an examination of all the evidence bearing on this point shows quite clearly that the owners and tenants of the Jencks Farm did what they reasonably could to keep gates or bar-ways across the way, and that though at certain times these were opened or unfastened, nevertheless, in the main they were maintained. This matter would seem to be of some consequence in considering the nature of the use which was made by those persons not connected with the property, and also in passing upon the question as to whether those using the way did so under claim of public right, and as to whether the owners of the land contemplated any dedication to the public.

It should also be borne in mind that from the year 1846 to the time of the partition suit the property was occupied by tenants. This situation might have a bearing on the question as to whether whatever use was made of the way was adverse. In this connection it is true that the complainants have introduced certain testimony relating to statements made in the past by members of the Watson family concerning the use of the way. The Court has considerable doubt as to the probative value of this testimony and believes that the evidence relating to the actual use of the way provides a safer and better method of determining whether the use in question was adverse and under a claim of right.

It further appears that there are two other roads leading from the Boston Neck Road to the beach, one to the north and the other to the south of the way in question. One of these roads is over the land of the Bonnet Point Land Company and the other over the land of Mr. Browning. Both of them are private roads on which a toll is charged. The respondent argues with some plausibility that if the way in question was a public road, recognized in the community as such, there would be little reason or justification for the existence of two toll roads leading to the beach not far distant from the way in question.

It can not be disputed that a considerable number of persons have at times gone to and from the beach over this way for a period extending back many years, some on foot and some with vehicles. The Court, however, has come to the conclusion, after considering with care all the evidence, that it is not clearly enough shown by the weight thereof that this user was so general, uninterrupted, continuous and adverse, and under a claim of public right, as to warrant the Court to finding that this way has become public by reason of an implied dedication and acceptance.

The preponderance of the testimony in the judgment of the Court, leads it to believe that, certainly in years past, the greater part of the travel over this way by those not connected with the farms in question has been permissive rather than adverse and not particularly continuous. The Court in this connection has kept in mind the nature of the country, the type of persons using the way, and the purposes for which they went to and from the beach and the localities from which they came; also the fact that gates or bar-ways have been more or less constantly maintained up to within comparatively recent times.

The Court is therefore of the opinion that this portion of the ancient way leading from the southeasterly corner of the Jencks Farm to the Boston Neck Road is not a public way.

The complainants also insist, however, that they, as owners of portions of the Jencks Farm, are entitled to use this driftway as a right appurtenant to their land.

It seems beyond dispute that the way involved in this case originated in the division of the property of Simeon Potter in 1806, and the written agreement immediately thereafter entered into by the heirs. It is clear that the

right to use the way was limited to the carting of seaweed and other drift stuff. It is difficult to determine whether the Jencks Farm or the Munroe Farm can properly be termed either the servient or the dominant tenant. As a matter of fact, according to the agreement, each had rights in the property of the other; viz.: the owners of the Munroe Farm to pass over the Jencks Farm and the owners of the latter farm to collect and pile up seaweed on the beach which was part of the Munroe Farm. In this connection the evidence shows that the land now owned by the parties is being platted and used chiefly for residential purposes rather than for farming, and it can not well be questioned but that the desire of the complainants to have access to the beach is now chiefly for the purposes of bathing and other recreations. A serious question can well be raised by the respondent that even assuming the complainants are entitled to use the way across her land, that right is limited to the terms of the original agreement, namely, the carting of seaweed and other drift stuff, and that such right does not properly include the use of the way to reach the beach for bathing and other like purposes.

In answer to the complainants' contention that they now have this private right of way, at least for the carting of seaweed, across the respondent's premises, the latter raises the issues of abandonment.

The testimony would seem to show that little or no seaweed or drift stuff has been carted over the way since the death of Joseph Johnson in 1916. The Munroe Farm has apparently not been cultivated for a considerable number of years and for some time prior to 1916 such sporadic hauling of seaweed as took place was done by those owning and occupying portions of the Jencks Farm. However, the law seems quite clear that where a right of way has been created by a writing, then the courts hesitate to hold that mere non-user of the right brings about an abandonment, even though that non-user extends over a considerable period of years.

*Johnson* vs. *Stitt*, 21 R. I. 429.

The Court has also said that abandonment in such a situation is a question of intention and this must be shown by positive evidence of an expressed declaration or by acts of a decisive character.

*Sweezy* vs. *Vallette*, 37 R. I. 51.

See also *Del Guidice* vs. *Shanley*, 139 Atl. 311.

After considering all the evidence on this point, the Court does not feel that it is sufficiently clear and definite to warrant the finding that the right to use the way for the purpose of carting seaweed has been abandoned by reason of non-user by the complainants or their ancestors-in-title as owners of portions of the Jencks Farm.

The respondent further urges, however, that the complainants, Gilbert and Bennett, have lost any easement they may have had by entering into a lease of certain portions of the land over which the said right of way passes, by the terms of which lease the complainant Bennett is given the right to erect buildings.

This claim of the respondent must refer to the first lease, because the lease of 1925 (Exhibit 13), entered into by these parties, specifically recognizes the way. It is quite clear from the testimony that these' complainants knew of the existence of this driftway at the time the leases were made. Further, as a matter of fact, the lessee has not in any way built upon or obstructed the right of way. In this connection the respondent has referred to the cases of

*Steere* vs. *Tiffany*, 13 R. I. 568;
*Aldrich* vs. *Billings*, 14 R. I. 236;
*Baker* vs. *Barry*, 22 R. I. 471.

It would seem to the Court, however,

that these cases are not in point, because, in each one of them, the party whom it is charged abandoned the way did some overt act in connection with the obstruction of the way itself which clearly showed the intention to abandon the way and extinguish the right. In this case the Court is of the opinion that no such situation is shown by the testimony. It therefore finds that the entering into any leases by the complainants Gilbert and Bennett did not cause them to lose any easement they may have had.

The respondent then urges that the complainants Johnson et al. have forfeited their right to use the way by closing the portion west of the Boston Neck Road and by platting lots thereon.

The Court does not believe this contention to be sound. In the first place, while the property west of the Boston Neck Road may have been platted, the part covered by the driftway apparently has not in any way been built upon or obstructed. In the second place, the testimony would seem to show that about 1866, when the Boston Neck Road was laid out, most of those using the right of way passed north on said road to the Card Farm rather than up the right of way west of said road. This was doubtless nearer and more convenient. Finally, even if the portion of the way west of the Boston Neck Road has been closed, the Court believes that this would not affect the part east of the road running down towards the shore.

Undoubtedly the strongest claim which the respondent can urge against the existence of any private right of way in the complainants is that the final decree in the partition suit relating to the Jencks Farm extinguished all rights and easements over the premises that may have theretofore existed in favor of the other portions of the Jencks Farm. In this connection it appears that the bill for partition was filed June 12, 1902, and the decree was dated September 29, 1903, appointing commissioners who were directed to go upon the premises, make plats, divide the lots by metes and bounds, and to lay out certain portions for streets or gangways. The commissioners' report was dated April 20, 1904. This showed that they caused a plat to be made and set off to various parties in interest certain lots. These parties were all ancestors-in-title of the present litigants. In the commissioners' report no mention of any kind was made of the driftway referred to in this case, nor did it appear upon the plat. On November 14, 1904, a final decree was entered which provided in part as follows: "that the said parties hold the lots or parcels of land allotted and set off to them respectively in said report in severalty, free from all claims on the part of the other parties or any of them, also the fee to the middle of the streets and avenues delineated on the said partition plat adjoining the lots, respectively, subject to the existing easements of way, if any there be, in such streets and avenues." The respondent argues that a decree of this kind prevents them from claiming any easements other than those fixed by the decree and that there is nothing left to the implication either from necessity or convenience.

*Valley Falls Co.* vs. *Dolan*, 9 R. I. 489.

The respondent also says that thereafter, in addition to this, the complainants Johnson in 1916 quitclaimed and released to the respondent all their right, title and interest in and to her lots across which it is claimed the right of way extends. In this regard the complainants' contention is that neither the partition suit nor the quitclaim deeds above referred to brought about an extinguishment of any right of way that may have existed over the respondent's lots, because no mention was made thereof, and, further, be-

cause said easement would pass to them, under their deeds, as an appurtenance without specific reference.

*Kenyon* vs. *Nichols*, 1 R. I. 411;
*Hall* vs. *Lawrence*, 2 R. I. 218;
*Wesley* vs. *Carlier*, 30 R. I. 403.

In considering this matter, it should be kept in mind that all the parties to these suits are now owners of different portions of the Jencks Farm. No one owning any portion of the Munroe Farm is making at the present time any claim. If anyone made claim as owner of part of the Munroe Farm to use this way for carting seaweed and other drift stuff, then a very different question would be presented for determination. But in the present situation, it would seem to the Court that the decree entered in the partition suit (the owners of the property at the time of the said suit being ancestors-in-title of the present parties), and, as far as the Johnson heirs are concerned, the quitclaim deeds executed by them to the respondent served to destroy any right of way over the premises involved, as far as the rights of the owners of the Jencks Farm among themselves were concerned.

There is in the testimony an indication that it was the intention of the commissioners and of the parties in the partition proceedings to make what is known in the evidence as the fifty foot street the way from the Boston Neck Road to the shore. There would seem to be little or no question but that the parties in this proceeding have a right to pass from the Boston Neck Road over the fifty foot road, so called. This was designated in the partition proceedings as a way for the use of all the lots, apparently without restriction as to the manner or method of use. The difficulty with this situation, however, is that this road ends at a stone wall some little distance from the beach at the line of property now owned by the Bonnet Point Land Company; also the portion of it near the

stone wall and near the beach is quite swampy and considerably overgrown. However, it doubtless could be put into condition for travel by the expenditure of money. The testimony shows that many of the present occupants of the Jencks Farm use this fifty foot road quite extensively as far as they can conveniently.

After giving the matter careful consideration, the Court finds that the decree entered in the partition proceedings by the ancestors-in-title of the present litigants is binding upon them and that its effect was to extinguish any right to pass over the driftway in question, at least so far as the owners of the different portions of the Jencks Farm were concerned in dealing with each other, either for the purpose of hauling seaweed or for any other use, across the premises involved in these proceedings.

The Court is therefore of the opinion that the complainants, as owners of parts of the Jencks Farm, have no right to pass over the driftway in question across the respondent's land to and from the beach.

On behalf of the complainants, it is urged that, if possible, this way should be kept open so that persons might have access to Westquage Beach. This beach, it should be remembered, is a portion of the property now owned by the Bonnet Point Land Company, and the Jencks Farm, as such, did not bound upon it. Apparently its nearest point was about 150 feet from the beach. Further, there is a private road leading to the beach over the land of Mr. Browning, and the Bonnet Point Land Company maintains a road leading to the beach, these last two roads being what are known as private or toll roads. No one will deny, of course, the benefits obtained from easy access to a fine beach, but, on the other hand, the way in question leads directly across the private property of the respondent in such manner as to serious-

ly injure it for residential purposes if the complainants' contention be maintained.

On the law and on the evidence, the Court finds that the complainants are not entitled to the relief they ask and the prayers of their bills are denied and the bills are dismissed.

For complainants: Voigt & O'Neill, Percy W. Gardner, McGovern & Slattery.

For respondent: Ralph M. Greenlaw.